

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00072-CV

_____

IN THE INTEREST OF A.S., A CHILD

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. 23-6572-462

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

### I. Introduction

Appellant S.S. (Father) appeals from an order terminating his parental rights to A.S. (Aaron) in this private-termination proceeding brought by Appellee M.B. (Mother).[1] In five issues, Father argues that the trial court[2] abused its discretion by denying his request to appoint an amicus attorney or an attorney ad litem for Aaron and that Father was harmed by this error, that the trial court violated Father's due-process right by denying his request for appointed counsel, that the evidence was insufficient to support the trial court's best-interest finding, and that the trial court abused its discretion by denying his motion for continuance. We affirm.

### II. Background

Mother has two other children: a daughter (Paige) and a son (Adam). Only Aaron, her youngest, is Father's biological child. After Aaron was born, Father cared for the children while Mother worked outside the home. Mother and Father separated when Aaron was three years old. After they separated, Father called Mother and

---

[1]We use aliases to identify the children involved, and we identify family members by their relationship to the children. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]This case was originally filed in the 462nd District Court of Denton County, Texas, but was transferred to the 16th District Court. The 367th District Court conducted the final hearing due to a scheduling conflict in the 16th District Court. When discussing the actions taken below, we will merely refer to the "trial court" rather than naming the specific court at issue.

confessed that he had repeatedly sexually assaulted Paige. Father pleaded guilty and was convicted and sentenced to five years in prison for aggravated sexual assault of a child.

Two-and-a-half years later, Mother filed a petition to terminate Father's parental rights to Aaron. Mother sought termination based on Father's sexual-assault conviction and knowing engagement in criminal conduct that resulted in conviction and imprisonment for at least two years. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(L), (Q). Father answered and requested appointed legal counsel for himself and Aaron. The trial court held a contested final hearing that Mother attended in person with counsel and that Father attended pro se from prison via Zoom. During the hearing, Father reasserted his motions for appointed counsel and for an amicus attorney or attorney ad litem for Aaron. He also orally moved for a continuance. After receiving the parties' evidence and arguments and denying Father's motions, the trial court terminated Father's parental rights to Aaron and issued a written termination order that same day. Father requested, and the trial court filed, findings of fact and conclusions of law, and this appeal followed.

### III. Discussion

Father contends in five issues that (1) the trial court abused its discretion by not appointing an amicus attorney or attorney ad litem for Aaron and (2) Father was harmed by this error, (3) the trial court violated Father's due-process right by not appointing counsel for him, (4) the evidence was insufficient to support the trial court's best-

3

interest finding, and (5) the trial court abused its discretion by denying his motion for continuance.

## A.  Amicus Attorney or Attorney Ad Litem

In his first issue, Father contends that the trial court abused its discretion by not appointing an amicus attorney or an attorney ad litem for Aaron because Father and Mother were adversaries and there was "nothing more than a scintilla of evidence" that Mother could adequately represent Aaron's interests and that her interests were not adverse to Aaron's. He asserts in his second issue that he was harmed by this error.

Courts generally have discretion to appoint counsel for children involved in private-termination suits. *Id.* § 107.021(a). But a court must appoint either an amicus attorney or an attorney ad litem unless it finds that the child's interests "will be represented adequately by a party to the suit whose interests are not in conflict with the child's interests." *Id.* § 107.021(a-1). We review a finding made under this section for an abuse of discretion. *In re B.W.*, No. 02-19-00009-CV, 2019 WL 2041808, at *5–6 (Tex. App.—Fort Worth May 9, 2019, no pet.) (mem. op.).

A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont*

4

*de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). But no abuse of discretion occurs when the trial court decides based on conflicting evidence, so long as some substantive and probative evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

The trial court found the following relevant facts:

6. The grounds for involuntary termination of a parent[–]child relationship are found in Tex. Fam. Code Sec. 161.001(b)(1). Petitioner [M]other sought termination on the basis of Respondent Father['s]:

   a. having been convicted of aggravated sexual assault of a minor under Tex. Fam. Code Sec. 161.001 (b) (l)(L) and

   b. knowingly engaging in criminal conduct that has resulted in the Respondent's (i) conviction of an offense, and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition under Tex. Fam. Code Sec. 161.001(b)(l)(Q).

   . . . .

8. On or about March 20, 2020, a Grand Jury indicted the Respondent on two separate counts of Aggravated Sexual Assault of a Child in Cause No. F20-918-462 in the 462nd District Court of Denton County, Texas.

   a. The Victim of the Aggravated Sexual Assault of a Child is the older daughter of Petitioner [Paige], who is not the child the subject of this suit[.]

5

b. On or about November 20, 2020, the Respondent plead[ed] guilty to both counts of Aggravated Sexual Assault of a Minor in Cause No. F20-918-462 in the 462nd District Court of Denton County, Texas.

c. Per the terms of his plea deal, he was sentenced to five (5) years in TDCJ [Texas Department of Criminal Justice], starting Nov 20, 2020.

. . . .

12. The Court heard evidence that Petitioner acted in the best interest of her children to keep them safe.

13. The Court heard evidence of a history or pattern of past sexual abuse and physical abuse of a child by the Respondent directed against Petitioner's children.

. . . .

16. The Court found that the interests of the child are represented adequately by the Petitioner, [Mother], in this case and that Petitioner's interests are not in conflict with the child [Aaron].

17. The Court found that the appointment of an attorney ad litem for the child [Aaron] is not necessary to ensure the determination of the best interests of the child.

And the trial court concluded:

4. Since the Petitioner [M]other's interests are not in conflict with the child, the appointment of an attorney ad litem is not required in a private[-]termination suit under Texas Family Code Sec. 107.021. The request for appointment of an attorney ad litem for the child is denied.

Contrary to the trial court's findings, Father contends that the trial court denied his amicus-attorney request based solely on "the opinion testimony of [Mother's] legal counsel." Citing *In re L.L.V.*, No. 05-22-01036-CV, 2023 WL 2726718, at *2 (Tex. App.—Dallas Mar. 31, 2023, no pet.) (mem. op.), he argues that the trial court abused

6

its discretion because "the parties [were] clearly adversaries and scant evidence was produced to support the finding that [Mother] adequately represented [Aaron's] interests." But the facts at issue in *L.L.V.* are very different from those at issue here.

In *L.L.V.*, the mother, Monica, filed a termination suit after the child's father, Rick, had been sentenced to life in prison for capital murder and she had married another man. *Id.* at *1. Monica helped Rick maintain his relationship with L.L.V. for several years after his arrest, but she eventually began a relationship with another man. *Id.* She began curtailing Rick's and his parents' access to L.L.V. and "sought to foster a bond between her new significant other and L.L.V." *Id.* Several months after Rick's conviction, Monica petitioned for divorce. *Id.* She assured Rick that she was not attempting to terminate his parental rights, and Rick agreed to the divorce. *Id.* Later that year, she married the other man and filed a termination petition. *Id.* Rick answered and filed a motion for an attorney ad litem and requested a hearing. *Id.* at *2. The trial court denied the motion without a hearing and found that an attorney ad litem was not necessary because Monica had no interest adverse to L.L.V. and would represent the child's interest. *Id.*

On appeal, the Dallas Court of Appeals noted that "the trial court had never heard any fact evidence that the interests of L.L.V. would be adequately represented by Monica, and that Monica's interests were not in conflict with L.L.V.'s interests." *Id.* The court noted that, "due to the nature of contested private proceedings for the termination of parental rights," finding that one parent would adequately represent the

7

child's interests "would be unusual" because "[t]hese cases by their very nature require the father and mother to litigate their personal interests." *Id.* at \*3 (quoting *Barfield v. White*, 647 S.W.2d 407, 409 (Tex. App.—Austin 1983, no writ)). The court cited *Arnold v. Collier*, 628 S.W.2d 468, 469 (Tex. App.—Beaumont 1981, no writ), as an example in which "[t]he parties were, as is customary in such litigation, very partisan and the mother was interested in removing the legal barrier to the adoption of the child by her husband." *Id.*

The court concluded that no evidence supported the denial of Rick's motion and noted that "Monica advocated for termination in a partisan fashion." *Id.* at \*4. Specifically, she argued that "her current husband would make a better parent" and explained that "she was pursuing termination because it was in L.L.V.'s best interest 'for him to have that father figure in his life, present, to go to games, to go to lunch with him, to just be there for him emotionally, physically, and mentally.'" *Id.* "[S]he did not 'want to confuse' L.L.V. as to who his parents were by allowing Rick to retain his constitutional rights as a parent." *Id.* Thus, the court held that the trial court abused its discretion by denying Rick's motion for an attorney ad item. *Id.*

*L.L.V.* and the cases it cites illustrate that parties to a private termination are "usually 'very partisan'" because they have some ulterior motive for the termination. *Id.* at \*3–4 (first quoting *Barfield*, 647 S.W.2d at 409, then citing *In re D.M.O.*, No. 04-17-00290-CV, 2018 WL 1402030, at \*3–4 (Tex. App.—San Antonio Mar. 21, 2018, no pet.) (mem. op.), and then citing *In re R.N.G.*, No. 11-02-00084-CV,

8

2002 WL 32344622, at *4 (Tex. App.—Eastland Dec. 12, 2002, no pet.) (not designated for publication)). When the evidence bears this out, as it usually does, counsel for the child must be appointed. *See, e.g., D.M.O.*, 2018 WL 1402030, at *4 (noting that father had not "engaged in violent or physically abusive behavior, . . . been incarcerated, or . . . otherwise engaged in conduct endangering the child" and that mother "sued to terminate [f]ather's parental rights to remove the legal barrier to the adoption of the child by her husband [to] 'mak[e] [her] family complete'"); *R.N.G.*, 2002 WL 32344622, at *4 (noting that there was no evidence that mother had knowingly placed the children in endangering conditions or had failed to arrange adequate support for them, that father sought termination to allow the children's stepmother to adopt them, that the children thought they would be adopted and have "two mothers," and that the children's desires were not considered). Here, there is no such evidence.

Father confessed to and was convicted for sexually assaulting Paige. Father did not object when the indictment and judgment of conviction were admitted at the final hearing. Paige and Adam participated in forensic interviews in which Paige described the sexual assault and alleged that Father had physically abused Adam by choking him. Mother testified that she brought this case to protect Aaron and that she had taken steps to protect her children since learning about Father's sexual assault, including ongoing family therapy. Father did not object to or cross-examine Mother on this testimony. And unlike the interested stepparents in *L.L.V., D.M.O., R.N.G.,* and

9

*Barfield*, there is no evidence that Mother has a new significant other or that she sought to terminate Father's rights for any purpose other than to protect Aaron.

These facts are almost identical to those at issue in *In re R.J.C.*, No. 04-09-00106-CV, 2010 WL 816188, at *1 (Tex. App.—San Antonio Mar. 10, 2010, no pet.). There, Darla Crawford sought to terminate Timothy Houtchens's parental rights after he was convicted of sexually assaulting his six-year-old stepdaughter. *Id.* at *1–2. Houtchens had confessed and pleaded guilty to the sexual assault. *Id.* at *2. Crawford sought to protect her son, R.J.C., who was born four months after Houtchens, his father, had been convicted. *Id.* "[S]he worried about [Houtchens's] sexual behavior and the effect it might have on R.J.C. if [Houtchens's] rights were not terminated." *Id.* On appeal, the court held that the trial court did not err by refusing to appoint an attorney ad litem for R.J.C. because the record reflected that "the primary interest of Crawford[—]the mother of [Houtchens's] victim as well as R.J.C.[—]was to protect R.[]J.C. from [Houtchens]." *Id.* at *3.

Both here and in *R.J.C.* the father sexually abused his stepdaughter. *Id.* *2. Both fathers confessed to the crime, pleaded guilty, and were convicted. *Id.* In both cases, the mother had a younger child with the father and sought to terminate the father's parental rights to protect that child from father's sexual behavior. *Id.* In both cases, there was no evidence that the mother of the victim and the child at issue sought termination for any other reason. *Id.* at *3. This case, like *R.J.C.*, is thus one of those "rare situation[s]" in which a trial court could properly find that an amicus attorney or attorney ad litem is

10

not necessary. *See L.L.V.*, 2023 WL 2726718 at \*3. Accordingly, we overrule Father's first and second issues.

## B. Appointed Counsel for Father

Father contends in his third issue that the trial court violated his due-process right by failing to grant him appointed counsel. Father argues that although the trial court had discretion to appoint counsel in this private-termination proceeding, his desire to contest the suit and "the challenges of defending against termination" should have compelled an appointment.

Trial courts must appoint counsel for indigent parents in termination suits brought by the State, but they need not do so in private-termination suits. Tex. Fam. Code Ann. §§ 107.013, .021(a); *In re J.C.*, 250 S.W.3d 486, 489 (Tex. App.—Fort Worth 2008, pet. denied). Thus, we review a trial court's decision not to appoint counsel in such a suit for an abuse of discretion. *In re L.F.*, No. 02-19-00421-CV, 2020 WL 2201905, at \*11 (Tex. App.—Fort Worth May 7, 2020, no pet.) (mem. op.).

Although there is no statutory mandate, due process may still require the appointment of counsel for a parent in a private-termination suit. *See* U.S. Const. amend. XIV. Trial courts, subject to appellate review, make the due-process determination on a case-by-case basis. *In re L.F.*, 2020 WL 2201905, at \*11–12. In doing so, they may consider whether (1) the petition alleges neglect or abuse that could support criminal charges, (2) expert witnesses are involved, (3) the case presents complicated procedural or substantive legal issues, (4) the record reflects that the lack

11

of counsel resulted in a fundamentally unfair trial, (5) appointed counsel would have made a "determinative difference," and (6) the parent showed a clear desire to contest the termination. *Id.* at \*12 (citing *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 32–33, 101 S. Ct. 2153, 2162–63 (1981)).

Here, Mother's petition alleged sexual abuse based on Father's conviction, and there were no additional allegations upon which he could have been charged. There were also no expert witnesses or complicated procedural or substantive legal issues.

The key to Father's termination was his conviction for sexually assaulting Paige. The judgment of conviction alone—admitted without objection—sufficed to support his termination under Subsection (L). *See, e.g.*, *In re Z.N.*, 602 S.W.3d 541, 548 (Tex. 2020) ("Given the physical, emotional, and psychological harm that can (and often does) result from the actions that constitute indecency with a child, a trier of fact may draw the 'reasonable and logical' inference that a conviction for indecency with a child, standing alone, resulted in serious injury to the child for the purpose of predicate ground (L)."). Under Subsection (Q), Mother had to also prove that Father was unable to care for Aaron for the two years preceding her petition. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(Q)(ii). The record reflects that she had been caring for Aaron since Father's arrest, and Father offered no evidence that he had arranged for anyone to care for Aaron on his behalf while he was incarcerated. *See, e.g.*, *In re E.S.S.*, 131 S.W.3d 632, 640 (Tex. App.—Fort Worth 2004, no pet.) (noting that the parents had named the

12

incarcerated parent's mother and brother as possessory conservators with visitation rights). Indeed, he had not even seen Aaron in over four years.

The evidence consisted solely of Mother's testimony, Father's testimony, and the criminal indictment and judgment of conviction on Father's sexual-assault charge. Although some objectionable testimony may have been admitted, the record does not reflect that any inadmissible evidence was offered or admitted. Regardless, we presume that the trial court considered only competent evidence in reaching its decision. *L.F.*, 2020 WL 2201905, at *13 (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 450 (Tex. 1982). And admitted incompetent evidence generally will not require reversal when competent evidence supports the judgment. *Gillespie*, 644 S.W.2d at 450.

Father asserts that he needed counsel because his incarceration prevented him from "secur[ing] witness testimony" and "imposed significant barriers to [his] ability to effectively represent his case at trial." Yet he does not indicate whom he would have called to testify or how that testimony would have affected the termination.

He also complains that he was forced to attend the final hearing from prison over an audio call via Zoom. He contends that multiple times during the hearing, he could not hear the proceedings and that his lack of counsel "did not allow [him] to participate in a meaningful and effective manner." But left unexplained is how counsel would have remedied the audio issues.

Regardless, the record reflects that the trial court diligently addressed all issues with the Zoom call to ensure that Father fully participated in the hearing. At the outset,

the trial court instructed Father to immediately raise any issues with the call as they occurred. Father did so, and the trial court responded by having the attendees repeat every statement that Father missed. The trial court even had Mother move from the witness stand to counsel table when the witness-stand microphone failed to pick up her testimony. The record also reflects that Father fully participated in the hearing by cross-examining Mother, lodging objections, making oral motions, testifying, and making a closing argument. The record thus does not support Father's contention that his Zoom attendance inhibited his ability to participate in the hearing, and nothing indicates that Father's lack of counsel made the proceedings fundamentally unfair. *See Lassiter*, 452 U.S. at 33, 101 S. Ct. at 2162.

To avoid termination, Father primarily asserted in the final hearing that he was working to improve himself. Although an attorney might have presented a better argument, nothing indicates that this would have made a determinative difference in the result, which was based primarily on Father's sexual-assault conviction and his knowing engagement in criminal conduct. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(L), (Q). And Father's clear desire to contest the termination did not alone entitle him to appointed counsel. *See R.J.C.*, 2010 WL 816188, at *4.

Consequently, we hold that the trial court did not abuse its discretion by not appointing trial counsel for Father. *See Lassiter*, 452 U.S. at 32–33, 101 S. Ct. at 2163; *L.F.*, 2020 WL 2201905, at *13; *R.J.C.*, 2010 WL 816188, at *3–4. We overrule Father's third issue.

14

## C. Evidentiary Sufficiency

Father asserts in his fourth issue that the evidence was insufficient to support the trial court's best-interest finding. He does not contest the trial court's findings under Subsections (L) or (Q).

For a trial court to terminate a parent–child relationship, the party seeking termination must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *Z.N.*, 602 S.W.3d at 545.

Thus, when reviewing the evidence's sufficiency to support a termination finding, we ask whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *Z.N.*, 602 S.W.3d at 545. Both legal and factual sufficiency turn on this question; the distinction between the two sufficiency analyses "lies in the extent to which disputed evidence contrary to a finding may be considered" in answering the question. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

In our legal-sufficiency analysis, we "look at all the evidence in the light most favorable to the finding," assuming that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so and disregarding all evidence

that a reasonable factfinder could have disbelieved. *Z.N.*, 602 S.W.3d at 545 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)); *A.C.*, 560 S.W.3d at 630–31. Factual sufficiency, however, requires "weighing disputed evidence contrary to the finding against all the evidence favoring the finding" to determine if, "in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *A.C.*, 560 S.W.3d at 630; *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("When the factual sufficiency of the evidence is challenged, only then is disputed or conflicting evidence under review."). The factfinder is the sole judge of the witnesses' credibility and demeanor. *J.O.A.*, 283 S.W.3d at 346.

Legal- and factual-sufficiency determinations overlap because factually sufficient evidence is necessarily legally sufficient. *In re A.O.*, No. 02-21-00376-CV, 2022 WL 1257384, at *8 (Tex. App.—Fort Worth Apr. 28, 2022, pet. denied) (mem. op.). Because it is unclear that Father has limited his challenge to factual or legal sufficiency, we will thus conduct a consolidated review. *See id.*

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *A.C.*, 560 S.W.3d at 631. In determining whether evidence suffices to support a best-interest finding, we review the entire record. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Evidence probative of a child's best interest may be the same evidence that is probative

16

of a Subsection (b)(1) ground. *Id.* at 249; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence in light of nonexclusive factors that the factfinder may apply in determining the child's best interest:

> (A)      the child's desires;
>
> (B)      the child's emotional and physical needs now and in the future;
>
> (C)      the emotional and physical danger to the child now and in the future;
>
> (D)      the parental abilities of the individuals seeking custody;
>
> (E)      the programs available to assist these individuals to promote the child's best interest;
>
> (F)      the plans for the child by these individuals or by the agency seeking custody;
>
> (G)      the stability of the home or proposed placement;
>
> (H)      the parent's acts or omissions indicating that the existing parent–child relationship is not a proper one; and
>
> (I)      any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"). These factors are not exhaustive, and some may not apply to particular cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.* On the other hand, "paltry evidence relevant to each" factor will not support such a finding in cases involving more complex facts. *Id.*

17

Focusing primarily on his termination under Subsection (Q), Father maintains that Subsection (Q) should be "given reduced weight" in the best-interest analysis because Aaron "was not at risk of being neglected." Citing *In re J.G.S.*, 574 S.W.3d 101, 119 (Tex. App.—Houston [1st Dist.] 2019, pet. denied), he argues that his incarceration should not weigh heavily against him because Mother was caring for Aaron and Father's aunt and his sister were willing and able to do so should something happen to Mother while he served the remainder of his prison term. Yet he offered no such evidence at the hearing. Moreover, the record does not reflect that Mother was caring for Aaron on Father's behalf—quite the opposite. *See In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006) ("Absent evidence that the non-incarcerated parent agreed to care for the child on behalf of the incarcerated parent, merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care."); *J.G.S.*, 574 S.W.3d at 119 ("[A] parent relying on another's provision of care to avoid termination under Subsection (Q) must demonstrate that the care is being provided on behalf of the parent, not out of an existing duty or inclination to care for the child.").

Addressing the *Holley* factors, Father contends that "scant evidence" was admitted—"other than his conviction"—to show that he was a danger to Aaron or that his relationship with Aaron was inappropriate. He further asserts that although "[i]t might be argued that [his] being a convicted felon [would] negatively affect[] [Aaron's] emotional well-being," "he was [Aaron's] primary caregiver" before his conviction. He

18

maintains that '[l]ittle to no evidence was presented to prove [his] parental abilities were insufficient." We disagree.

Although the record reflects that Father cared for the children alone while Mother worked outside the home before his arrest, it also reflects that he used this time to sexually assault Paige. This fact alone demonstrates that he presents a danger to Aaron and lacks parental abilities. *See In re S.G.*, No. 01-18-00728-CV, 2019 WL 1448870, at *9 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, pet. denied) (mem. op.) ("Evidence that a parent has sexually abused one child . . . is a relevant consideration when a jury decides whether the parent poses a danger to the emotional and physical well-being of other children."); *R.J.C.*, 2010 WL 816188, at *2 (holding that father's aggravated assault of his stepdaughter, his sexual behavior toward at least two other children, and the mother's concern about the effect this would have on R.J.C. sufficed legally and factually to terminate father's parental rights). The trial court could have found termination in Aaron's best interest on Father's sexual-assault conviction alone. *See C.H.*, 89 S.W.3d at 27 (holding that undisputed evidence of just one factor can support finding that termination is in child's best interest).

Regardless, no record evidence skews the remaining *Holley* factors in Father's favor. Aaron was eight years old at the time of the final hearing and was too young to voice a desire. *See In re A.K.*, No. 02-22-00154-CV, 2022 WL 4545571, at *3 (Tex. App.—Fort Worth Sept. 29, 2022, pet. denied) (mem. op.); *In re M.H.*, 319 S.W.3d 137, 150 (Tex. App.—Waco 2010, no pet.); *see also* Tex. Fam. Code. Ann. § 153.134(a)(6)

(requiring a child to be at least twelve years old before the child's preference, if any, regarding the person to have the exclusive right to designate the child's primary residence becomes a factor), § 156.101(a)(2) (same). There is also no evidence that Aaron has any special needs. Thus, these two factors are neutral.

The remaining factors all weigh against Father. Citing his testimony that he planned to see a therapist "who specializes in people like him" after his release, Father asserts on appeal that he was sexually abused as a child and that "he knows there is help available to him." But Father offered no evidence or testimony to support his sexual-abuse allegation, and the trial court, as the sole judge of Father's credibility and demeanor, was free to disbelieve him. *See J.O.A.*, 283 S.W.3d at 346. Similarly, although he argues on appeal that Mother has moved "multiple times" since his conviction, he cites no evidence for this assertion. Regardless, he offered no evidence of his plans for Aaron or his housing after his release other than expressing a desire to work so that Aaron "may go to college."

On this record, we conclude that the evidence was legally and factually sufficient to support the trial court's best-interest finding, *see Z.N.*, 602 S.W.3d at 545; *A.C.*, 560 S.W.3d at 630–31, and we overrule Father's fourth issue.

## D. Motion for Continuance

Father contends in his fifth issue that the trial court abused its discretion by denying his oral motion for continuance. During the final hearing, Father orally moved to continue the hearing until his prison release, a year and a half later. Father argues that

20

a continuance would have allowed him to "more meaningfully participate in trial" by giving him time to obtain counsel, witnesses, and an expert.

We will disturb a trial court's ruling on a continuance motion only if the trial court clearly abused its discretion. *See* Tex. R. Civ. P. 251; *In re E.L.T.*, 93 S.W.3d 372, 374 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, and without reference to any guiding rules and principles. *E.L.T.*, 93 S.W.3d at 375. We cannot substitute our judgment for that of the trial court. *Id.* at 374.

Texas Rule of Civil Procedure 251 provides that a motion for continuance must not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251; *E.L.T.*, 93 S.W.3d at 374–75.

The parties did not consent to a continuance, and Father's motion did not comply with Rule 251 because it was not supported by affidavit. *See* Tex. R. Civ. P. 251. When a continuance motion lacks an accompanying affidavit, we presume that the trial court does not abuse its discretion by denying it. *E.L.T.*, 93 S.W.3d at 375. Not only was Father's motion not supported by an affidavit, but he also has failed to show sufficient cause or that the law required a continuance. Thus, the trial court did not abuse its discretion by denying his motion. *See In re K-A.B.M.*, 551 S.W.3d 275, 284 (Tex. App.—El Paso 2018, no pet.); *E.L.T.*, 93 S.W.3d at 374–75. We overrule Father's fifth issue.

## IV. Conclusion

Having overruled Father's issues, we affirm the trial court's termination order.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: May 30, 2024